Please call the next case, document number 4-130392-WC, Don Young, College v. Workers' Compensation Commission, broadcast at half-a-week. If it pleases the court. My name is David Moss. I'm representing Don Young in this matter. This is a review, an appeal of a denial of benefits to the claimant on the basis that his injury did not arise out of an accident. Specifically, on February 19, 2010, the claimant was engaged in his regular course of work duties, which involved him working with machine parts called spring clips. These spring clips were brought to him in a box, and the box was 16 inches by 16 inches square and 33 inches tall. Mr. Young was reaching for the last part in the box, and as he reached in with his left arm, he experienced a snap or a pop and a burning in his shoulder. So one would think that that would be compensable ostensibly, but the commission seemed to have found the mere act of reaching down for an item in the box did not increase the claimant's risk of injury beyond what a person would experience as a normal activity of daily living. So tell us why that is not true. Was it just simply a matter of reaching into a box, or there's another component or aspect of this that takes it out of that? Here, the testimony that I solicited from Mr. Young was designed to address exactly that. When originally approached what happened, Don related his accident, what he was doing. At trial, I said, how far in do you have to go? He talks about having to reach down into the bottom of the box. He says, you understand how boxes are folded inside, sometimes they catch on, so I try to reach down under the part before bringing it up. Were you lifting the part up out of the box at that time? No, I wasn't lifting at that time, but I was reaching down as far as I could go. Now, in the record is the transcript of my argument, and a photograph for it, which we have. And I was going to say throughout that, I talk about this, and refer to this. So I brought this with me today, which is simply a blow-up of the photograph that is in evidence and is a matter of the record. Now, on the face of it, Your Honor, I'm saying this is a unique action, a unique experience. It is something that is unique to Don's employment, or Don Castor's. And so consequently, the act of reaching into a box to get out a part, even if there were no more, would constitute an accident under the act. This is a deep, narrow box, is that what you're arguing? I am going exactly by what the employer has defined it as, a 16 by 16 inch square by 33 inch box. And these are how these parts are brought to him. At the time of his injury, he was performing X duties assigned to him to do by his employer. Exactly. And, you know, reaching into the box as part of his duties, the risk of injury doing that, why would that be a risk peculiar to his employment? Because not everybody has to reach in a 16 by 16 by 33 inch box. That's what I'm saying. I'm throwing you a softball here. I mean, you know, there are risks peculiar to your employment. There are neutral risks, and there are risks peculiar to the individual. If a risk is peculiar, if it's a risk peculiar to your employment, why would there be any neutral risk analysis? Why would you have to have a comparison to the general public? That's precisely what you're saying. It's precisely what I'm saying. I'm saying that I'm astounded that I'm here arguing that this is not, or is, a work injury. I want to clear up one other issue. There is absolutely no question that this was the mechanism of his injury. No question whatsoever? Every doctor, that's what was reported, and every doctor that saw him, this is the history they got, this is the history that was put on him. Yes. So the only question we have is, was there an error in finding that this did not arise out of? Yes. As a matter of law. And this is why I'm asking the court in this instance to review this. Because there is absolutely no question, no dispute, no problems with the facts or the mechanism of accident. Now, Mr. Hatchell is going to get up here in a minute and say that's not true, that there are differences, that there are variances. And to that point, let me, not to preach, but let me point out that in any workers' compensation case, there's really two different causal connection issues, or two questions. The first one is, is there a causal connection between the employment and the injury? And that's what I'm doing today, is saying, yes, there is a causal connection between the employment and the injury. This is the Orsini case, this is the Accolade case. The second causal connection of the question is, is there, and this is what is found on the stipulation sheet, is there a causal connection between the injury and the condition of ill-being as presented at trial? Now, we very often find those in workers' compensation cases. But the question that he had a torn rotator cuff, the fact that he had a torn rotator cuff surgically treated, and the fact that the torn rotator cuff arose because of this, because of reaching into this box, is not an issue. Mr. Haxel is going to say, well, there are differences, because his history of this accident is different to everybody he talks to. His pain, and my position is that that's fine. He can argue that. But what is being argued is, is there a causal connection between the condition of ill-being and the injury? And in this case, the employer's own doctor, Dr. Coleman, said, reaching into this box is what caused this torn rotator cuff, this shoulder injury. More to the point, the employer stipulated at hearing that the shoulder injury was caused by reaching into the box. Well, that's where I raised the issue when I asked the question. We don't have anything to decide here whether the arising out of issue was properly decided. Right. Everything else, I don't think there's any disagreement on it, is there? No. He hurt himself reaching into a box. Right. The question is, was reaching into the box, did that arise out of his employment, yes or no? Yes or no. I guess we're done. And I don't, again, don't mean to be flippant, but I think it is so basic, I think it is so obvious, I think it is so vivid, that this is the reason, in this instance, it should be reviewed. This is not a reason to know, and obviously, reversing the commission in regard to this finding. Thank you, counsel. Thank you, counsel. Police court, Mr. Moss, my name is Martin Haxel, I'm the attorney for the respondent. And I would submit to you that the commission got it right, and they need to be affirmed. I would submit to this court that the most believable description of what really happened on the date of the accident can only be found in the written, the typed statement that the petitioner himself prepared the very next day of work. Within that written statement, he just said he was reaching for a piece in this box and felt something in his left shoulder snap. Not any pain at that time. Thirty to sixty minutes later, he clocked out of work, he finished working for the day, went home, it was a Friday evening. Sometime later that night, his shoulder was in a little pain, and as the weekend wore on, it got worse. So, we have a situation in which a person's reaching down, and he says, I feel something snap in my shoulder. Was he just reaching in the box to see what was in there, or was he doing his job? He was doing his job. That's part of his job. Okay. He had already retrieved other parts out of that same box. Okay, let me ask you a question. We all walk across and reach down and pick something up off the ground every now and then. Yes, we do. That's something we all do. But if it's my job to go out and pick up trash off a parking lot, and I hurt my back doing that, is it necessary to perform an analysis of whether I do it more often than the general public, or whether there was something else about my employment that made it a greater risk, or am I compensated because that is a risk that's due to my employment? Well, I'll try to be wishy-washy. It depends. I mean, all the time the commission faces cases, you hear cases, does this particular injury arise out of one's employment? And it's always a fact-sensitive analysis. It always depends upon all the surrounding facts and circumstances, because given the example you just gave, the MIRRA Act, if you're picking up trash all day long, you're bending over continuously, and you're picking up things off the floor, I would submit to the court that is a heightened risk of injury associated with one's employment. But do you get compensated for it because you're doing your job and it's your job to do it, and that's a risk incident to your employment, or are you compensated for it because you do it more often than the public? Why do you even have to do that analysis? You have to do that analysis because if it's a risk that the public at large is exposed to by way of a similar degree, then it is not a risk incident to one's employment. For example, I believe this court, within the last month or two, issued a decision about an injury on a set of stairs. And I think the testimony in that case was that this person had to be walking down these stairs six or seven times in the course of the day, and this court found that was a sufficient number of times for this person to have to traverse that set of stairs to create a heightened risk. Well, the Supreme Court has told us many times that walking up and down stairs is a neutral risk. It is. And that's because we don't pay people. We don't hire people just to walk up and down stairs. That's different than hiring somebody to bend over to pick up trash or hiring somebody to reach in and pull parts out of a box, because the risk of getting injured is something specifically connected to what they're required to do to perform their job. Which is why you need more. Just walking up and down stairs isn't enough. Let's give you argument that, too. Let me suggest that maybe there is some more in here. This isn't somebody who just, you know, went over and on the top of a box was what he was looking for. As I understand the record, he had to reach into the bottom of a deep box with a narrow opening. What about the argument that reaching increased his exposure to a greater risk in the general public, because that's not what the general public... I mean, you can say you're reaching into a box or somebody could have to dangle to get to the bottom of a box. Reaching into a box is not the same in every case, is it? That's what you seem to be saying. The general public reaches once in a while. Ergo, he does what everybody else does every day. Well, here's why this is a factual issue in the manifest way to the evidence standard does apply. As I mentioned a couple moments ago, the most believable description of this accident is found in the petitioner's own written statement. Yeah, because he's reaching, but he's summarizing it. Does he say, I reached all the way down into the narrow box, giving dimensions? Why would a lay person ever say that? He reaches into a box. That's what he's describing in his statement. He reaches into a box. Well, was he reaching? Was he halfway down the box when he felt the snap? Was he really stretching? Was he all the way down? Or was he just straining as far as he could go, go all the way down to the floor when he felt that pop? But there's only one story. There's only one story that answers those questions. There's no contradictory evidence that the box was in there less than the depth that counsel suggests it is, or that he was actually reaching to the bottom of the box. He just says he was reaching. I understand that, but what did he testify to? Then at trial, he testified that he had actually grasped the last part off the bottom. Was there any contradictory evidence to that?  He didn't say that when he was asked about it. I understand that, but is there anything contradictory about what he said compared to what he said at the beginning? Or is it nothing more than an elaboration on a very general statement? He testified at trial that he had actually grasped the last part on the bottom of the box, which he didn't state in his statement. He testified at trial that when he felt that pop in his shoulder, he also felt a burning sensation and perhaps a little bit of pain, which he didn't write down in his statement. Could I ask you a question? That's what he testified to? That's correct. What did the evidence suggest that that's untrue? Assume you're right, it is manifest weight. Tell me where the weight of the evidence is that contradicts that statement. Where in the record? Because he said at the beginning, I was reaching into a box. Well, once again, as the commission found, the mere act of reaching without more is not enough. But the more came in his testimony. You want to limit the proofs to his initial application or his initial reporting of the accident and ignore his testimony. He elaborated in his testimony under oath, he gave more details, correct? He gave more details, and then as he saw successive doctors, he kind of added some extra details and kind of embellished a little bit to make it sound more significant than it appeared to be initially at the time of the accident. But even your own expert says that reaching into this box is what caused his injury. There's no disputing that. That is true, and the doctor's opinion quite clearly states he's relying very heavily upon what the patient, the petitioner was telling him as opposed to looking at what was written down by the petitioner. And I agree with you, but in a manifest weight state, there has to be some evidence to support the commission's decision. What is it? There have been numerous cases cited by Mr. Moss and myself. I've cited some where the act of reaching was deemed not a work-related accident. Mr. Moss has found cases where the contrary conclusion was reached. If you want to start trying to reconcile all of them, we're in big, big trouble because we're never going to be able to do that. But in this particular case, the petitioner needed to prove more and failed to do so. I cited a case, a commission case, in my brief. Be careful now, a commission case? A commission case. I don't think you want to know that. Pardon me? Not a lot of site commission cases, did you know that? We don't read them. We've got cases that say you can't do that. It's almost as bad as citing a Rule 23. We go goofy. We're not going to go goofy this afternoon, but just get on to the next one. I'll go back to the stairs analysis. Go back to a safer analysis. I'll go back to the stairs. I mean, there's a lot of appellate cases on that. Good. I wrote the stairs. I know exactly what you're talking about. I wrote the stairs. I know exactly what you're talking about. That poor man in that police station, he had to walk down those stairs how many times a day to get his clothes? But we digress. We digress. Was that a Rule 23? I didn't publish that, did I? You're not supposed to cite that even to me. It's going from bad to worse. We're going from bad to worse. Get on to the actual case. Go ahead. I'm sorry. The arbitrator observed this man testifying. The arbitrator and the commission weighed the inconsistencies between his testimony and that in his written statement, and they concluded he failed to prove a heightened risk of injury related to his employment. This photograph could be a photograph taken of me this morning picking my newspaper up off the front door. We all know that every day we bend over to pick things up off the floor, whether it's a shoe, a pet bowl, something out of the refrigerator, a toy that a kid dropped, whatever. Bending over, reaching for something is not a heightened risk of injury associated with one's employment. How much does your newspaper weigh and how many times a day do you pick it up? Well, the newspaper doesn't weigh what a spring clip weighs, but when you count the number of times I pick up stuff off the floor in the course of the day, it probably adds up. The other thing I'd like to point out here, Your Honors, is by the petitioner's own description, it claims he felt this pop, but no pain at the time. Thirty to sixty minutes later, he's gone for the weekend. Well, what did he use his arm to reach for after that? What did he pick up during the course of the weekend? Ah, that's an entirely different issue than we have in front of us. That's nature and extent. And that has to be viewed after there's a determination that the original injury was out of and in the course of. We're still on the arising out of part. If we disagree with the commission on the arising out of part, you're going to get a perfect opportunity to argue that whatever his current condition of ill being is, is not related to his original injury. But that comes only after we find the arising out of him in the course of. I mention it because, one, we all know petitioners get the burden of proof. Two, I think the fact that there was no, by his own words, no pain at the time, no pain experienced at all for several hours at least until later on in the evening is very significant. I think the arbitrator took that into account along with the commission in concluding that, okay, he felt a pop in his shoulder. So what? So he was reaching. So what? We really don't know for certain whether he had something picked up or not. It's his burden of proof. Thank you, Counsel. Counsel, you may reply. Thank you, Your Honor. Let me not beat a dead horse. I do want to stand up here and take the blame along with Mr. Haxel of citing commission decisions to the court. You did the same thing, huh? I did the same thing. Just don't cite my rule 23. I won't do that. I won't do that. You're crazy. Crazier. I want to get back to some of Mr. Haxel's arguments, which perhaps we've already clarified are really not relevant material to this case. Mr. Haxel keeps arguing about the variances and the differences in the histories of not accident, not injury, but in pain. And I believe it was well pointed that this really addresses the nature and extent of the injury. More to the point, I think this addresses the causal connection of the condition of the illness. In other words, over the course of the weekend, was he out playing darts? Was he pitching horseshoes? Was he in a dance contest? Well, when we tried this case, when we presented this case, it was on all issues. If there was a question that there was something else going on, that was the time to bring it in. That was the time to address it. Ultimately, I think with the employer arguing the way they are, they're talking about whether the condition of ill-being is connected to the injury. This is a causal connection issue that they've already stipulated here. This is a causal connection issue that their own doctor has addressed for them in favor of the employee. And ultimately, I believe the employer may have brought the wrong girl to the dance because this is just not material and this isn't relevant and isn't something that even needs to be addressed. So again, I would ask the court, utilizing denial of overview, to overturn the condition and reward the employee, Don Young, with that. Thank you, counsel, both. This matter will be taken under advisement. The written disposition is no issue. Court will stand in brief recess.